# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 16-1293V
Filed: May 23, 2017
Not to be Published

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| ROBERT KINZIE, | \* | |
| | \* | |
| Petitioner, | \* | |
| | \* | |
| v. | \* | Influenza ("flu") vaccine; phrenic |
| | \* | nerve paralysis; Parsonage-Turner |
| SECRETARY OF HEALTH | \* | syndrome; no expert report; dismissal |
| AND HUMAN SERVICES, | \* | |
| | \* | |
| Respondent. | \* | |
| | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

F. John Caldwell, Jr., Sarasota, FL, for petitioner.
Darryl R. Wishard, Washington, DC, for respondent.

**MILLMAN, Special Master**

## DECISION[1]

## ORDER DENYING MOTION FOR AMENDMENT OF SCHEDULE

On October 7, 2016, petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10–34 (2012) (the "Vaccine Act"), alleging that influenza ("flu") vaccine administered either on November 3, 2013 or November 1, 2014 caused him phrenic nerve paralysis on the right and/or Parsonage-Turner syndrome, and, in the alternative for the latter vaccination, significant aggravation. Pet. at ¶¶ 1, 2, 8.

The Vaccine Administration Record of the Army National Guard shows that petitioner

---

[1] Because this unpublished decision contains a reasoned explanation for the special master's action in this case, the special master intends to post this unpublished decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). Vaccine Rule 18(b) states that all decisions of the special masters will be made available to the public unless they contain trade secrets or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would constitute a clearly unwarranted invasion of privacy. When such a decision is filed, petitioner has 14 days to identify and move to redact such information prior to the document's enclosure. If the special master, upon review, agrees that the identified material fits within the banned categories listed above, the special master shall redact such material from public access.

received flu vaccine on November 3, 2013 and on September 30, 2015 (petitioner did not allege any vaccine injury from the September 30, 2015 vaccination.) It does not show petitioner received flu vaccine on November 1, 2014. Med. recs. Ex. 1, at 1. However, petitioner's military record shows that he received flu vaccine on November 1, 2014. Med. recs. Ex. 8, at 773-74.

The medical records show that the onset of petitioner's right shoulder injury was April 21, 2014, five months after petitioner's November 3, 2013 flu vaccination. Med. recs. Ex. 2, at 28. The pain radiated to his right neck. Id. Petitioner had done some yard work on April 19, 2014. Id.

No medical records show reactions to any of the three flu vaccinations administered within the statute of limitations of the filing date of the petition.

On October 24, 2016, the undersigned issued an Order to Show Cause why this case should not be dismissed, which would be discussed during the first telephonic status conference the undersigned held in this case on November 21, 2016, at 3:00 p.m. (EST).

On November 21, 2016, the undersigned held the first and only telephonic status conference in this case. Petitioner's counsel stated this was a tough case. Phrenic nerve injury is not an autoimmune disease. Petitioner's counsel wanted to consult with a neurologist. He stated he would not proceed with the case if a neurologist refused to support petitioner's allegations. Petitioner's counsel also stated he would show the neurologist the undersigned's Order to Show Cause. By Order dated November 21, 2016, the undersigned gave petitioner's counsel a deadline of January 23, 2017 to file a status report explaining how he intended to proceed, i.e., with a motion to dismiss or by filing an expert report.

On January 23, 2017, petitioner's counsel filed a status report stating that he was in the process of having a neurologist review the case file and he expected to file an expert report in 60 days. On January 23, 2017, the undersigned issued a non-PDF Order granting petitioner's informal motion for an extension of time until March 24, 2017 to file an expert report.

On March 24, 2017, petitioner's counsel filed a motion for enlargement of time, stating that the original neurologist was unable to review the records and counsel had retained another neurologist but needed 60 more days to file an expert report. On March 24, 2017, the undersigned issued a non-PDF Order granting petitioner's motion for enlargement of time until May 22, 2017 to file an expert report.

On May 22, 2017, petitioner filed a motion for an amendment of the schedule, stating petitioner's counsel will not be filing an expert report in this case. Petitioner wanted 30 days to file either a dispositive motion or other appropriate pleading.

The undersigned **DENIES** petitioner's motion for an amendment of the schedule and **DISMISSES** this case.

**FACTS**

Petitioner was born on February 18, 1968.

On November 3, 2013, petitioner received flu vaccine. Med. recs. Ex. 1, at 1.

On April 21, 2014, five months after petitioner's flu vaccination on November 3, 2013, petitioner sought medical treatment for right shoulder pain radiating to his right neck. Med. recs. Ex. 1, at 28. He had done yard work on April 19, 2014. Id.

On May 5, 2014, petitioner had a pulmonary function study performed. Med. recs. Ex. 2, at 108. The results showed abnormal pulmonary function because petitioner had moderate, obstructive lung disease with mild airway reversibility. In addition, he had moderate hypoxia on the arterial blood gas. Id.

On October 21, 2014, petitioner had a chest x-ray in comparison to one done on January 21, 2013. Med. recs. Ex. 2, at 95. Petitioner had a mildly enlarged heart with elevation of the right hemidiaphragm with right basilar air-space opacity and likely effusion, all new in comparison to his January 21, 2013 chest x-ray. Calcified nodules in his lungs bilaterally suggested prior granulomatous disease. Id.

On November 7, 2014, petitioner had a CT scan of his chest and abdomen with contrast, compared to a prior two-view scan of his chest on January 21, 2013. Id. at 92. Petitioner had moderate elevation of his right hemidiaphragm. This condition was new compared to his previous two-view chest scan. These findings might be related to paralysis of the phrenic nerve. Id. Petitioner also had atelectasis/infiltrate at the right base of the lung, just above the elevated hemidiaphragm, and evidence of healed granulomatous disease. Id. at 93.

On February 26, 2015, petitioner saw Dr. Ruxandra C. Ionescu, a pulmonologist, for dyspnea on exertion that started about one year previously in April 2014. Med. recs. Ex. 4, at 17. A chest x-ray showed an elevated right diaphragm. A neck MRI showed a couple of bulging discs. Id. Dr. Ionescu thought petitioner might have exercise-induced asthma. Id. at 18.

On April 25, 2015, petitioner had a fluoroscopy performed for shortness of breath. Med. res. Ex. 3, at 78. Petitioner had elevated and decreased movement of the right hemidiaphragm. Id.

On June 16, 2015, petitioner saw Dr. David W. Harvey, a neurologist, because he was concerned he had a neuromuscular disorder. Med. recs. Ex. 2, at 69. Petitioner gave a history of waking in April 2014 with severe pain in the back of his neck on the right side. Because he had asthma and had difficulty running, he saw a pulmonologist, Dr. Ionescu, who ordered pulmonary function tests. A chest CT scan in November 2014 showed an elevated right hemidiaphragm and

3

right base atelectasis.  Petitioner developed swallowing problems at the beginning of 2015 and felt he had a lump in his throat.  An essential tremor of his arms started in 2014.  If he raised his arms to shoulder level, his hands started to tingle.  He denied muscle cramps, eyelid or facial weakness, double vision, extremity weakness, dropping things, tripping, or difficulty holding up his head or trunk.  His girlfriend told him he moved constantly during sleep.  He got divorced recently but his former wife never mentioned his moving constantly in sleep.  Therefore, he estimated that his constant movement in sleep began about eight months earlier.  Id.  On physical examination, he had 4/5 reduced muscle strength in the left upper extremity (finger intrinsics, grip) and zero reflexes in his left wrist and left elbow.  Id. at 72.  Dr. Harvey consulted Dr. Kincaid at the IUH (Indiana University Health) Neuroscience Center, who suspected that the initial event of neck pain might have represented a phrenic neuritis or brachial plexitis.  Petitioner's new arm weakness affected the opposite side and might or might not be related.  Id.

On July 21, 2015, a nerve conduction study on the left arm and bilateral phrenic nerves due to complaint of left arm weakness and right hemidiaphragm showed right phrenic neuropathy without brachial plexopathy or myopathy.  Med. recs. Ex. 5, at 7.  The left arm had normal nerve conduction and a normal EMG.  Id.

On August 13, 2015, petitioner went to Schneck Medical Center Speech Pathology Clinic for a swallowing evaluation since he was diagnosed with oropharyngeal dysphagia.  Med. recs. Ex. 6, at 48.  Petitioner stated he experienced neck pain and difficulty with breathing during exercise about 18 months previously.  Id.  He was diagnosed with possible reflux/impairment in the esophageal phase of the swallow based on his report of a globus sensation in his throat and occasional heartburn.  He also had pharyngeal dysphagia with a mild risk for aspiration of liquid possibly due to respiratory difficulty and incoordination.  Id. at 49.

On October 26, 2015, petitioner had a sleep study performed at St. Francis Hospital.  Med. recs. Ex. 3, at 94.  Petitioner had obstructive apnea and hypopneas.  Id.  He did not have any limb movements or periodic movements during the test.  Id. at 95.  He had severe apnea in REM sleep.  Id.

On February 1, 2016, Dr. Harvey diagnosed petitioner with right phrenic neuropathy.  Med. recs. Ex. 2, at 38.

On February 5, 2016, petitioner saw Dr. Subaila Zia for his sleep apnea.  Med. recs. Ex. 4, at 6.  He had been snoring for 10 years and would wake up gasping and choking without feeling refreshed.  Id.  His sleep apnea resolved with the use of CPAP.  Id.

On April 6, 2016, petitioner saw Dr. Zia for a follow-up of his sleep apnea.  Id. at 2.  His sleep apnea was due to his weight gain of 30 pounds in the last five years plus his crowded airway.  Id. at 4.  Hypoventilation due to right phrenic neuropathy was not playing a role in his sleep apnea.  Id.  He was compliant with use of CPAP and counseled to lose weight.  Id.  He reported leg movements but they did not meet the criteria for restless leg syndrome since the movements got better with rest and worse with exercise.  The lab sleep study noted no limb

movements.  Id.

## DISCUSSION

To satisfy his burden of proving causation in fact, petitioner must prove by preponderant evidence: "(1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury."  Althen v. Sec'y of HHS, 418 F.3d 1274, 1278 (Fed. Cir. 2005).  In Althen, the Federal Circuit quoted its opinion in Grant v. Sec'y of HHS, 956 F.2d 1144, 1148 (Fed. Cir. 1992):

> A persuasive medical theory is demonstrated by "proof of a logical sequence of cause and effect showing that the vaccination was the reason for the injury[,]" the logical sequence being supported by "reputable medical or scientific explanation[,]" i.e., "evidence in the form of scientific studies or expert medical testimony[.]"

418 F.3d at 1278.

Petitioner must show not only that but for the vaccine, he would not have had the injury, but also that the vaccine was a substantial factor in bringing about his injury.  Shyface v. Sec'y of HHS, 165 F.3d 1344, 1352 (Fed. Cir. 1999).

The undersigned cannot rule in petitioner's favor based solely on his allegations "unsubstantiated by medical records or by medical opinion."  42 U.S.C. § 300aa-13(a)(1).

Here, no medical record substantiates petitioner having a vaccine reaction.  Five months elapsed between petitioner's November 3, 2013 flu vaccination and his visit to a doctor in April 2014 to complain of right shoulder and neck pain two days after gardening.  Although petitioner's neurologist conferred with another neurologist who entertained the possibility of petitioner having brachial plexopathy, nerve conduction studies and EMG ruled that out.  Petitioner had right phrenic neuropathy but not brachial plexopathy and nerve conduction and EMG testing showed his left arm was normal.

Petitioner has not filed a medical opinion substantiating a vaccine injury.  It would be difficult to know upon what basis a doctor could opine there was a vaccine injury five months after the November 3, 2013 flu vaccination.  Moreover, although petitioner had many bodily complaints, including dysphagia, sleep apnea, and obesity, none of them has anything to do with his subsequent flu vaccinations on November 1, 2014 and September 30, 2015.

The undersigned gave petitioner's counsel 90 days to obtain a neurological

expert's opinion. The first neurologist did not provide any help. The second neurologist was unwilling to support petitioner's allegations. In petitioner's latest filing, he states he will not be filing an expert report. Petitioner has failed to satisfy his burden of proof in a non-Table case.

The undersigned **DENIES** petitioner's Motion for an Amendment of the Schedule and **DISMISSES** this case for failure to prove a prima facie case of causation in fact.

## CONCLUSION

This petition is **DISMISSED**. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[2]

**IT IS SO ORDERED.**

Dated: May 23, 2017                                         /s/ Laura D. Millman
                                                                      Laura D. Millman
                                                                      Special Master

---

[2] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.